## BURNHAM *v.* JONES *et al.,* Com'rs.

*(Supreme Court, General Term, Third Department. July 2, 1888.)*

1. PUBLIC LANDS—GRANT OF LAND UNDER NAVIGABLE LAKES—CERTIORARI TO REVIEW.
Laws N. Y. 1850, c. 283, § 1, provides that the commissioners of the land-office may grant land under the waters of navigable lakes to the adjacent land-owners, and that a grant to any other person shall be void. The commissioners gave notice that B. applied for the land under waters adjacent to lands claimed by him. The relator, claiming to own a portion of the land, filed a remonstrance, but the grant was made to B. *Held,* that as the relator, not being the owner of the land under water, could not bring trespass or ejectment against B., and as, in any event, this decision might be a bar, *certiorari* will lie to review it.

2. SAME—WHO ARE RIPARIAN OWNERS.
B. obtained, in 1873, a deed conveying certain land, by metes and bounds, "210 feet, to the beach of Lake Ontario,"with the use, with others, of the beach on the end of the lot, and of a private street. Relator obtained a deed, in 1885, through the same grantor, to an adjoining lot, described by metes and bounds; "thence easterly along said lake," reserving to the grantor and others fishing and bathing privileges. By a later deed, he obtained all the rights of their common grantor to the beach in front of his lot, and the private street. In 1885, B. obtained another lot, adjoining his first purchase, and bounded "along the shore of the lake," and granting a right of way over the beach along the land before conveyed to him. *Held,* that B.'s recognition of an easement in 1885 shows that there was a strip between the boundary of the lot first conveyed to him and the lake, over which B. only had an easement, and the owner of that strip alone has a right to a grant of the land under the water adjacent to it, under Laws N. Y. 1850, c. 283, § 1; and, as B. shows no deed conveying this strip to him or his grantors, he has no rights to the land under the water adjacent to relator's lot.

3. TRIAL—ARGUMENTS OF COUNSEL—PROOF OF FACTS.

Assertions of counsel made in an argument, after the evidence has been given, as to the facts in dispute, whether replied to or not by the opposite counsel, cannot take the place of proof, and are no part of the return in *certiorari*.

*Certiorari* to the commissioners of the land-office.

The people *ex rel.* Charles G. Burnham bring *certiorari* against Edward F. Jones and others, commissioners of the land-office, to review the grant of certain land under Lake Ontario to the Bartholomay Brewing Company.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*W. B. Hornblower*, for relator.    *F. Tabor*, Atty. Gen., for defendants.

LEARNED, P. J.   Assuming, for the present, that the relator was the proprietor of the lands adjacent to a part of those under water which were granted by the commissioners of the land-office, we must inquire whether he can review their action by *certiorari*.   The relator had no title to or interest in the lands under water in front of his premises.   *People* v. *Ferry Co.*, 68 N. Y. 71.   Subject to the paramount control of the federal government, the state holds the title, and may grant the soil to such lands, or convey an exclusive privilege.   It may do this, although it thereby cuts off the communication between the riparian proprietor and the water.   *Gould* v. *Railroad Co.*, 6 N. Y. 522.   When, however, the state gave authority to the commissioners of the land-office to make grants of land under the waters of navigable rivers or lakes, it put a restriction upon such authority, and declared that no such grant shall be made to any person other than the proprietor of the adjacent land, and any such grant that may be made to any other person shall be void. Laws 1850, c. 283, § 1.   Chapter 134, Laws 1839, authorizes the commissioners to require the attendance of witnesses, etc.   Section 70, 1 Rev. St. 208, requires the applicant for a grant of lands under water to give six weeks' notice by advertisement in a newspaper, etc.   It was held in *People* v. *Schermerhorn*, 19 Barb. 541, that the publication of this notice was essential to jurisdiction.   That was a case where a grant was held void partly because it was not made to adjacent proprietors.   In the present case, upon application of the Bartholomay Brewing Company having been made for a grant of lands under water adjacent to lands owned by them, and notice having been published, a remonstrance was filed on behalf of the present relator, claiming that he was owner of a part of the premises.   The matter was referred to the attorney general to hear the parties in interest.   After examining the proofs of title, and hearing counsel, he reported, as a matter of fact, that the brewing company had the title in fee to the uplands. · On reading this report, and hearing counsel for the respective parties, it was resolved that the report be agreed to, and that the grant of lands under water be made.   Now, it seems to us that here are all the elements of judicial or *quasi* judicial action—*First*, two parties each claiming title to the same piece of land; *second*, evidence given by each tending to support the respective claims; *third*, counsel heard on each side; *fourth*, a decision that the title is in one party; *fifth*, a grant made to that party as owner of the uplands.   It certainly was the duty of the commissioners (and so they thought) to examine and decide whether the applicant was owner; and their decision may, perhaps, be forever conclusive, as between these parties, on this question of ownership.   Furthermore, if the brewing company was not the proprietor of the adjacent land, then there was a want of jurisdiction in the commissioners by the express language of the statute.   Nor was there such a conflict of evidence that their action cannot be reviewed.   *People* v. *Board*, 100 N. Y. 82, 85, 2 N. E. Rep. 613; *People* v. *Board*, 72 N. Y. 415.   And, though the relator has no legal title to the adjacent lands under water, yet he has a practical use, inasmuch as he, and he only, could, before this grant, go from his land upon those waters for boating or fishing or bathing, or any other purpose; and the statute has said that

this right shall not be taken from him by any grant made by the commissioners of the land-office. Although this grant may be void, yet that is not a reason why a *certiorari* will not lie. *Fitch* v. *Commissioners,* 22 Wend. 132. Unless the relator can be relieved by this writ, it is not easy to see what remedy he has. As the land under water is not his, he could not bring ejectment or trespass, should the company build thereon; and, in any action which he might bring, it is possible that this decision of the commissioners would be a bar. We think, for these reasons, that the *certiorari* can be sustained.

The question arising on undisputed facts, we have next to inquire, was the brewing company the proprietor of that part of the land in question? It is a circumstance worthy of notice that the attorney general, when reporting that the brewing company had the title in fee to the lands, "substantially as shown by its maps," qualified his report by advising that the grant to the company should be absolute for the lands applied for, except that the grant in front of the 100 feet claimed by relator should be in a separate patent, and in form a quitclaim. Why the state should make a quitclaim deed for lands under water, which confessedly belong to it, is not clear, unless this was done on account of the statute making void all grants to others than adjacent proprietors. The relator claims that a piece of land 100 feet long, westerly of the west line of a private street, and about 32 feet wide, is not the property of the company, and is the property of the relator. Each party claims under James M. Whitney and wife. Beach avenue is a straight street, running east and west, nearly parallel with the lake shore, but nearer at the west. A private street 30 feet wide, spoken of in the deeds, runs from Beach avenue to lake shore, and at right angles to the same. This street is parallel with the west line of lot 20, and is easterly therefrom. The brewing company claims under a deed February 22, 1873, from James M. Whitney and wife to Charles E. Upton. There was some error in this deed, in saying "east" line of a private street instead of "west" line, which was corrected by a subsequent conveyance, and which we need not consider. We take the description as corrected: "Beginning at the west line of a private street or avenue 30 feet wide, extending from Beach avenue, parallel with and 250 feet easterly from the west line of said lot 20, at a point 73 feet northerly from the north line of Beach avenue; thence northerly, along said street, 210 feet, to the beach of Lake Ontario; thence westerly, at right angles, 100 feet, to land sold by party of first part to J. D. Husbands and others; thence southerly, at right angles, 210 feet, along said Husbands' land; thence easterly, at right angles, to the place of beginning,—together with the use and privilege of the beach at the end of the private street, and for a distance of 100 feet westerly therefrom, in common with the owners of lots in the south-west quarter of said lot 20, for bathing and fishing." It will be seen, then, that this language describes a parallelogram, the south-east corner of which is 73 feet from Beach avenue, and which is 100 feet wide, and 210 feet long. This it describes as running at its north end to the beach; and the deed then gives certain rights of bathing and fishing on the beach at the north end of the land described, and also at the end of the private street, in common with owners of other lots. The land in dispute is that, if any, which lies between the north end of the lot above described and the waters of the lake, which land, as the relator claims, is called the "Beach." October 1, 1885, James M. Whitney and wife conveyed to Wareham Whitney as follows: "Beginning in the west line of a private street 30 feet wide, extending from Beach avenue to Lake Ontario, at a point 283 feet northerly from the north line of Beach avenue, on the line of said private street; thence westerly, at right angles, to said private street, 100 feet; thence northerly, to Lake Ontario; thence easterly, along said lake, to the west line of said private street; thence southerly, to the place of beginning,—together with right of way over said private street." This reserved to grantor and all others having grants the right to use the shore of the lake for boating, fishing,

and bathing. November 1, 1886, James M. Whitney and wife and Wareham Whitney conveyed to relator "all right, title, and interest of said parties of the first part in and to the beach of said Lake Ontario in front of said private street or avenue, and a distance of 100 feet westerly therefrom, subject to any rights and privileges in said beach which said parties of the first part may have heretofore conveyed." Under this deed, and one of November 11, 1886, from James M. Whitney and wife to the relator, which seems to be of substantially the same effect, the relator claims to be the owner of this strip, 100 feet long, along the lake, and of some 30 feet wide. It might be said that a strip so narrow need not be considered in determining who was proprietor of lands adjacent to the water, inasmuch as the brewing company are undisputed proprietors of the land immediately south of this strip. But the facts in *People* v. *Colgate*, 67 N. Y. 512, were quite similar; and the court held that the grant was void, although made to one whose land was separated a few feet from the river, and they said that the owner of those few feet might have retained the title (while granting an easement) for the very purpose of subsequently securing from the state a grant of lands under water. It will be seen that the deed to Upton conveys by exact measurement a certain number of feet. Under the principle laid down in *Higinbotham* v. *Stoddard*, 72 N. Y. 94, these distances must control, even against the language, "to the beach of Lake Ontario." See *Railroad Co.* v. *Stigeler*, 61 N. Y. 348. But it is not clear that these last words conflict with the measurement. The language is not "to the shore" or "to the water," but "to the beach;" and there follows in the deed a grant of an easement over that beach. Now, by granting an easement over "the beach," the grantor did not mean to grant an easement in lands under water, because that was not his to grant. He referred to something which he called the "Beach," and which lay at the end of the private street, and for 100 feet westerly; that is, between the land conveyed and the water of the lake. This easement, too, was for bathing and boating, showing that the land over which the easement was granted was adjacent to the water; and, if that land was adjacent to the water, then it necessarily follows that the parallelogram of 100 feet by 210 feet was not so adjacent. Furthermore, this easement was in common with easements enjoyed by other owners of lots. Clearly, such owners had no easements over the lot 100 feet by 210; for that was conveyed absolutely. If the construction of the brewing company is correct, viz., that the deed to Upton conveyed land to the waters of the lake, then the grantor did the very absurd act of granting to Upton, by a subsequent clause in the deed, an easement over land which had been conveyed to him absolutely in the prior part of the deed. Furthermore, on the 18th of April, 1885, James M. Whitney and wife conveyed to this brewing company certain lands in lot 20. This lot lies west of and adjoining the lot conveyed to Upton. It is bounded "along the shore of said lake." And, further, the grantors granted thereby to said company "the right of way over and the use and privilege of the beach of said lake lying north of the lands heretofore conveyed to Charles E. Upton by deed recorded," etc., referring to the aforesaid deed, "in common with owners of other lots," etc. Here is an acceptance by the brewing company of a right of way, and use and privilege, in common with other owners of lots, over the very piece of land called the "Beach," to which they now say that their grantor, Upton, obtained absolute title in 1873. And we must observe that the question is as to the title of the brewing company, not as to the title of the relator. The company must show itself to be an adjacent proprietor before it can be entitled to the grant; and therefore their recognition, in 1885, of this strip, lying between their land and the water, must show that they were not then adjacent proprietors. It is of little consequence how wide this strip, called the "Beach," was in 1873. There plainly was a strip of land there between the lot conveyed to Upton and the water,—a strip over which certain persons had been granted easements, and over which Upton himself was

granted a similar easement. The title to that strip, with its accretions, remained in James M. Whitney till by conveyances it passed to the relator. To the proprietor of that strip, and to no one else, could the commissioners of the land-office lawfully grant lands under water in front thereof. Certainly, the brewing company has shown no deeds which convey this strip to it or its grantors.

Our attention is called to an assertion in the return that on the final argument before the commissioners, which was after the evidence had been given, it was asserted by the petitioner, and not denied by the remonstrant, that the strip of land in question was formed by accretions since September, 1873, and that at that date the lands conveyed to Upton were bounded by the waters of the lake. This is certainly no evidence. What one counsel may have said, and what another may not have said, cannot affect this question. The evidence had been taken, and is now before us. It contradicts that allegation plainly, because the deed to Upton shows, as above stated, the existence at that time of a beach, (not lands under water,) over which Upton accepted the grant of an easement. The brewing company, his grantees, cannot deny the conveyance under which they claim. Their own deed of 1885 accepts a grant of an easement over this strip of land. Why accept an easement if they already had title? It is not credible that the counsel for the relator would have knowingly admitted the truth of an allegation in conflict with every position taken by him, and with every deed on which he relied, in this case. There was no evidence given on the subject of accretion; and the assertion of counsel, whether replied to or not by the opposite counsel, cannot take the place of proof. The *certiorari* did not call on the commissioners to return the arguments or assertions of counsel. The resolution directing the issue of a grant of land under water in front of these 100 feet is reversed, and the application of the brewing company is denied as to that part. No costs.

LANDON and INGALLS, JJ., concur.